Willard, J.
The first objection to the plea is, that it does not justify the entry of the defendants’ engineers and servants to make the preliminary examinations and surveys. The plea does not alledge that any compensation for such entry had been paid or tendered to the plaintiff before such entry, nor was such payment required by the act incorporating the defendants. The 9th section of the act (Laws of 1834, p. 440) contemplates, that
*458 the defendants, by their agents, surveyors and engineers, may enter upon, take possession of, and use all such lands and real estate as may be necessary for the construction and maintenance of their said road, but before making any portion of said road on said land, if they can not agree with the owner as to the price of the land, they must pursue the measures prescribed by that section, to appraise the damages, and deposit the sum at which it shall be assessed, to the credit of the owner, in such bank as shall be designated in pursuance thereof. The question raised is whether a law which authorizes an entry upon another man’s land, for the purpose of making the preliminary or final surveys for a railroad, before compensation is made, is constitutional, when the act makes suitable provision for compensation in case the land is subsequently taken therefor. This question has been repeatedly settled by the highest courts of the state, in favor of the constitutionality of the act. It was directly involved in the leading case of Rogers v. Bradshaw, (20 John. 735, 744,) and the right to enter for such purpose was upheld by the unanimous opinion of the court of errors. The same doctrine was repeated with approbation by Walworth, Ch., in Bloodgood v. The Mohawk and Hudson Railroad, (18 Wend. 17.) Unless the legislature possess power to authorize an entry for this purpose, the clause of the constitution which by implication permits private property to be taken for public use, upon making just compensation, (Const, of 1821, art. 7, § 7,) would be nugatory. The constitution does not prohibit the legislature from permitting an entry to be made upon the property of an individual for the purpose of a preliminary examination. The prohibition relates only to the taking it for public use without just compensation. This clause was not contained in the constitution of 1777, but was borrowed from the fifth article of the amendments of the United States constitution. But the constitutional prohibition was merely declaratory of the existing law. In this state, before the adoption of the United States constitution, a road, public or private, was not allowed to be laid out through the improved lands of another without a suitable provision for the payment of damages. (7th Session, ch. 72, §§ 2, 3, 1 Greenl, *459 Laws, 105, act of 4th May, 1784.) The plea affords a justification for the entry by the defendants’ surveyors and engineers to make the requisite surveys, preparatory to taking the land for the use of the railroad.
Many of the objections to the plea are founded in a misapprehension of the facts, and many are frivolous. There are some, however, which require to be noticed.
It is objected by the plaintiff’s counsel, that there is no averment of the presenting a petition to the first judge. He insists that the petition should state all the facts sufficient to confer jurisdiction, &c.
The plea avers a disagreement between the plaintiff and defendants as to price, in substance as required by § 9, Laws of 1884, p. 440 ; and that while such disagreement existed, John McLean, jun. first judge, “ on the petition of the defendants in writing, duly issued and delivered his warrant to the sheriff,” <fcc. (1.) This is an averment of the presenting a petition. It is not an argumentative, inferential statement, but a direct affirmation, upon which issue could be taken. (1 Chit. Pl. 309. 1 Saund. 235, n. 8.) In replevin, cognizance by defendant in right of his wife who was tenant for life, for rent being in arrear. Special demurrer, because it was not averred that the wife was alive. It was held that the words “ being in arrear” was an averment that the wife was alive. (2 Lev. 88.) (2.) It is pleaded in the language of the law. The statute does not prescribe what shall be contained in the petition. In this respect it differs from the insolvent laws, (1 R. L. of 1813, 460,) the six first sections of which show what it must contain to give jurisdiction. And see Service v. Heermance, (1 John. 91.)
The judge could only act on the petition of the defendants, and the latter could not petition except in case of a disagreement as to price. The disagreement is averred, and the action of the , judge is expressly stated to be on the defendants’ petition. It is therefore necessarily implied that a petition was presented.
It is also objected that the plaintiff had no notice of the drawing of the jury by the clerk, sheriff and first judge. If by this is meant that no notice in writing was served upon him, of the *460 time and place of such drawing, the objection is founded in truth. But such written notice was not required by the 9th section of the act. All that is demanded by that section is that the judge on receiving the petition shall direct the sheriff of the county to give public notice in at least one newspaper printed in the said county, that at some future day not less than thirty days from the first publication of the said notice, the clerk of the county and the said judge will proceed to draw, at the clerk's office, the names of twelve persons, &e. The plea alledges that the judge appointed the day for this drawing, issued his warrant to the sheriff requiring him to give the notice by publication, and that said sheriff did publish the notice as required by law, in a public newspaper in said county, the name of which is given. These facts are admitted by the demurrer. The plaintiff, therefore, had precisely the notice which the statute required. It was not necessary to set out the names and places of abode of the twelve jurors who were drawn. It is never usual in the record to insert the names of any other jurors than those sworn in the cause. The statute is silent on the subject, and the practice in analogous cases should govern. It is objected that none but the judge who attended at the drawing of the jury could issue a warrant to summons the jury, and none such is averred to have been issued. It is true the ninth section does not contemplate the state of things which actually happened. It provides for the case of sickness or inability of the judge, but not for the case of an abrogation of his office by an entire change of the organic law. The new constitution and the judiciary act provided for this contingency, and the plea sets out the transfer of the proceedings from the late first judge of the court of common pleas of Washington county, to the county judge elected under the new constitution. And the plea also states that the county judge having thus become possessed of the proceedings, issued his warrant to the sheriff, requiring him to summons the said twelve jurors so drawn as aforesaid, to be before him at a certain day and place. And it is averred also, that a certificate of the drawing of the jurors, containing their names and places of *461 abode, was given to the sheriff. This was a compliance with the statute.
On the return day of the warrant, eleven of the jurors, so drawn, appeared, and the sheriff returned as to the other, that he was a non-resident of the county at the time of the drawing, and still was, and could not for that reason be summoned, and was not in fact summoned. The plea states that the jurors were drawn in the same manner as the names of persons were then drawn for juries in courts of record; that no objections were then and there made to either of them ; that they were not residents of any town through which the said railroad passed, nor of kin to any of the persons claiming damages or interested in said road, nor of kin to any person who was so interested, or who claimed such damages ; nor were any of them dead or insane or permanently removed from said county, to the knowledge or belief of any person so attending such drawing as aforesaid. It thus negatives the existence of any fact which would have required the setting aside a person drawn, and the drawing another. (See 9th section Laws of 1834, p. 440 ; 2 R. S. 414.) Perhaps these averments were unnecessary; but they are not objected to upon that ground, and stand admitted by the demurrer. The objection is, that only eleven jurors were in fact summoned ; and it is insisted that, as the 9th section of the act has not provided for this contingency, the whole subsequent proceedings have been irregular and void.
If the failure to summon one of the twelve persons drawn, was occasioned by the act of the defendants, it would afford ground for the argument that they intended to diminish the plaintiff’s chance of having an impartial jury. But the cause for his not being summoned is conceded by the demurrer, and it presents as satisfactory a reason as if the juror had died between the drawing and the return day of the venire. It is enough that this omission to summon him proceeded from a cause over which the defendants had no control. Nor'are the defendants responsible for not knowing, at the time the jurors were drawn, that the person in question had permanently removed from the county. The plaintiff had such notice of this drawing as the statute re *462 quired, and might, had he attended, and known the fact, have communicated it to the clerk and thus caused another name to be drawn. But in truth no blame is imputable to any one. The ninth section, by requiring that only six jurors shall be taken by lot, to make the assessment, out of the twelve names drawn from the county jury box, goes upon the ground that it may be inconvenient for the whole twelve to attend. The objections to the jurors are required to be made at the time the twelve names are drawn, and it is for that purpose that notice is required to be given in the public paper. The whole proceeding is made as nearly as possible analogous to drawing juries in courts of record. In these courts we have first the notice of the drawing; then the drawing a larger number than is required to form a jury; and lastly, the summoning the jurors so drawn. It rarely happens that all the persons drawn from the box are summoned to attend court. Some will have died or left the county, before the drawing, and this fact be unknown to either the judge, clerk or sheriff. But it has never been supposed to be an objection to the jurors drawn for a given action, that the entire panel had not been summoned, when the omission was not attributable to the fault of the adverse party. It satisfies the claims of the 9th section if the sheriff summons all the persons drawn who are in life and within his jurisdiction, and six can be taken by lot from that number, free from exceptions. The demurrer concedes that this was done on the present occasion. Such is the practice under the act “ of summary procedings to recover the possession of land in other cases,” (2 R. L. 514, §§ 35,36.) Under the latter act, the sheriff is required to summon the eighteen jurors nominated by the judge, and twelve of the persons so summoned are balloted for, and drawn, in like manner as jurors in courts of record. It has never been supposed that the non-attendance of one of the eighteen would oust the judge of jurisdiction.
Another objection to the plea is that the county judge continued the proceedings by adjournments. This it is urged he had no right to do, and that it worked a discontinuance. To this there are two answers: First, although the 9th section does not, in terms, authorize an adjournment from day to day, yet it obvi *463 ously implies that the proceedings may be thus continued. It allows to the judge three dollars, and each of said jurors the sum of two dollars, for each day employed in the aforesaid assessment ; and it requires the railroad company to pay the sheriff for his services such sum as the judge shall certify tobe reasonable and proper, and such other incidental expenses, including witnesses’ fees, as the said judge shall determine to be just and equitable. If the matter had been required to be closed at a single sitting, the compensation of the judge, sheriff and jury, would probably have been regulated by the fee bill in similar cases. The act of April, 1820, relative to landlords and tenants, under which the cause of Nichols v. Williams, (8 Cowen, 13,) arose, gave to the magistrates and officers the like fees as for similar services under any other act or acts. (Laws of 1820, p. 178, § 6.) This would have allowed the judge a shilling for judgment, and the like fee to each juror. These fees were revived in 1823, but the law still gave a specific sum for each service, and not a per diem allowance. (Laws of 1823, p. 429, § 35, 46th session.) The case of Nichols v. Williams, {supra,) went upon the ground that the law gave no authority to adjourn, and that an inferior jurisdiction must strictly pursue the authority under which it acts. That case is inapplicable, because the statute in the present case devolves upon the judge and jury duties which can not be performed without an adjournment, and the compensation is graduated upon the assumption that an adjournment will be necessary. Second; it appears by the plea, that at the day when the plaintiff’s damages were assessed, the parties all appeared, without objection. Although an appearance might not confer jurisdiction where none existed before, it would be a waiver of any irregularities which might have taken place.
It has been urged that the plaintiff had no notice of the drawing of the jury and of the assessment. It has already been shown that he had the notice required by law, of the first drawing of the jury; and it is averred in the plea, and admitted by the demurrer, that he had fourteen days’ notice of the time and place where his damages were to be assessed, and that he actually appeared and contested the assessment, without objection *464 as to the notice. This is all the notice which the statute required.
It is said also that some portions of the plea relate to the claims of other landholders for damages, with which the plaintiff has no concern. It is urged that this matter is surplusage. In giving a full detail of the steps taken by the defendants, under the 9th section of the act, to cause the damages to be assessed on account of the construction of the railroad, it was probably necessary to mention the disagreement as to price, between the defendants and others besides the plaintiff. The several cases were doubtless embraced in the same petition to the judge, and a single jury was summoned for all. It was not contemplated by the act that a separate jury should be drawn for each case. This is clear from the language of the 9th section, speaking of the qualification of the jurors : they are not to be of kin to any person claiming damages, or interested in the said road, or of kin to those who are. And this is fortified by the mode in which they are to be compensated for their services, viz. a per diem allowance, and not a stated fee. But suppose all the matter of the plea, relating to the other persons whose lands were taken, and with respect to which there was a disagreement as to price, was surplusage, the objection can not be taken by demurrer. It does not prejudice the plaintiff’s right. It is not contradictory to any other matter in the plea, or repugnant to it. It therefore comes within the rule of pleading, that surplusage does not vitiate, utile per inutile non vitiatur. (1 Chit. Pl. 232. 4 East, 400. 2 Saund. 306, n. 14.) The remedy for expurgating useless matter from a plea is not, in general, a demurrer.
It is objected that the proceedings were not regularly transferred from the first judge of the court of common pleas to the county judge, in this, that the former directed them to be transferred to the latter, on giving to the owners of the land, with respect to which there was a disagreement as to price, one day’s notice of the order, and. that no such notice was given. There is not, indeed, any direct averment in the plea of such notice. But it is alledged that such proceedings were thereupon had, by vir *465 tue of the said order, and of the statute in such case made and provided, that the said proceedings became and were transferred. All the subsequent proceedings, and the plaintiff’s appearance on the assessment of the damages, are stated in the plea, as having transpired after such transfer. No objection was made before the county judge, by the plaintiff, that he had no notice of the transfer. This notice was for his benefit, and a subsequent appearance by him was, therefore, a waiver of it, or an admission that it had been regularly served. But in fact the plea avers that the plaintiff had fourteen days’ notice of the transfer, and of the appraisement.
Another reason assigned in the special causes of demurrer, against the regularity of the transfer, is that by the 9th section of the act the proceedings were instituted before Judge McLean, first judge of the court of common pleas of the county of Washington, and the order for transferring the proceedings is signed by him as first judge of the county courts of that county. If his title had been omitted entirely, the transfer would have been equally effectual, as it was made by the person before whom the proceeding was pending. The constitution of 1821 designates the local judges as judges of the county courts, but they are frequently described in statutes, by the name of the particular courts of which they are judges. The first judge of the county courts, and the first judge of the court of common pleas of the same county, was one and the same person, not only in this, but in all cases.
Again; it is said that the appraisement was irregular because the jury merely appraised the value of the land, and omitted to appraise the damages which the plaintiff sustained by reason of the appropriation thereof to the use of the defendants. This objection is not founded in fact. The certificate of the jury recites that they were sworn to appraise the lands of the said plaintiff situate along and adjoining the line of the railroad of the said company as at present located in the town of Whitehall in-said county, and the damages the said plaintiff shall sustain by reason of the appropriation of said lands to the use of the said company ; that having heard the proofs and allegations of *466 the parties, they do upon their oaths appraise the same at five hundred dollars. It then proceeds and sets out the premises by metes and bounds as contained in the survey made by the defendants’ engineer. The certificate follows the language of the statute, and is not obnoxious to the criticism made upon it by the demurrer. The statute does not require that the price of each separate piece of land should be separately stated.
It is objected that the plea does not directly aver that the defendants deposited the said five hundred dollars to the credit of the plaintiff, nor specify the kind of proof which was given to the county judge, before he made his decree. The plea is in the precise language of the act, which is that upon proof to the said judge, to be made within thirty days after such assessment, of payment to the owner, or of depositing to the credit of the owner, in such incorporated moneyed institution as the said judge shall direct, of the amount of said award, and the payment of all expenses, the said judge shall make an order or decree particularly describing the land and reciting the appraisement of damages, and the mode of making it, and all other facts necessary to a compliance with the 9th section; and when the order is recorded in the county clerk’s office, the said corporation shall be possessed of all such land or real estate, and may enter upon and take possession, and use the same for the purpose of the said road. It was superfluous to set out any other facts in the plea, than the statute required. Enough are averred to vest the title in the defendants for the purposes contemplated by the act. The plea then sets out the decree in hcec verba, which recites all the material facts, from the first disagreement as to price, to the final decision. This was sufficient.
The plea sets out all the facts necessary to confer jurisdiction on the officer; it concedes the plaintiff’s title to the land; avers that it was necessary, and shows the location of the road; states the disagreement as to price, and that an application was made by petition to the first judge, and that he directed notice to be given by the sheriff as required by law, for the drawing of the jury, which was done; that the jury were drawn as by law required : that the proceedings were transferred under the constitution *467 and the 76th section of the judiciary act of 1847, and the subsequent steps, down to and including the decree. In my judgment the plea makes out a complete defense, and is good in form as well as in substance.
I have looked into many of the cases to which we were referred on the argument, and find none of them settling any principle incompatible with the validity of this plea. The general doctrine, that an inferior tribunal must strictly pursue the authority under which it acts, is not questioned. As there had been, in this case, a full and substantial compliance with the act, and as the act, however defective in some respects, is believed to be constitutional, the plea affords a complete bar to the action.
There must, therefore, be judgment for the defendants on the demurrer to the second plea, with leave for the plaintiff to reply, on payment of costs.
Cady, J. concurred.
Hand, J. dissented.
Judgment for defendants.